UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SYLVIA VAZQUEZ, | Case No. 2:13-CV-2125 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| VALLEY HOSPITAL MEDICAL CENTER, INC., | |
| Defendant(s). | |

Presently before the court is defendant Valley Hospital Medical Center, Inc.'s ("Valley Hospital") motion for summary judgment. (Doc. # 22). Plaintiff Sylvia Vazquez filed a response (doc. # 33) and defendant filed a reply (doc. # 37).

**I.    Background**

Valley Hospital hired plaintiff, a Hispanic female, on or about December 4, 1992 as an MRI tech. (Doc. # 1 at 3). Valley Hospital maintains a strict confidentiality policy regarding patient and employee information that is included in the employee handbook. (Doc. # 22-1 at 23-25). Plaintiff received the employee handbook when she started work at Valley Hospital, and again in April 1995 and February 1998. (Doc. # 22-1 at 20, 21). Each time plaintiff signed a document certifying that she received a copy of the employee handbook and would familiarize herself with these policies. (*Id.*). Plaintiff also certified that she understood that violation of any of the rules and regulations in the employee handbook could result in disciplinary action or termination. (*Id.*).

Valley Hospital tacked paystubs for all employees who received direct-deposit pay to a bulletin board in the MRI department. The envelopes holding the paystubs had a clear window

**James C. Mahan**
**U.S. District Judge**

1    that displayed the employee's name. (Doc # 22-7 at 8). In April 2007 plaintiff opened and viewed
2    a paystub for another MRI tech, Mr. Ludwig Williams, instead of opening her own. The parties
3    dispute whether plaintiff's viewing of the paystub was intentional or a mistake.

4          Plaintiff, upon seeing Mr. Williams' paystub, perceived what she viewed as a pay disparity.
5    Plaintiff then copied her own paystub and Mr. Williams' paystub. Plaintiff left a copy in two of
6    her managers' mailboxes with notes stating, "I would like to know why Lud is making over $3.00
7    per hour more than I for MRI call back time. What can be done to make this more equitable?
8    Sylvia." (Doc. # 22-3 at 4, 6).

9          On May 1, 2007, a human resources administrator from Valley Hospital sent plaintiff a
10   response to her inquiry regarding the pay difference between Mr. Williams and plaintiff. (Doc. #
11   22-7 at 32). The letter explained that MRI tech salaries are determined by a pay matrix and pay
12   raises are determined by employee performance. (*Id.*). It also stated that the human resources
13   administrator and one of plaintiff's supervisors investigated plaintiff's concern of pay disparity
14   and found no errors or irregularities in their reviewed of plaintiff's and Mr. Williams' files and
15   wages.

16         The letter also stated that the human resources administrator and plaintiff's supervisor were
17   concerned with plaintiff's possession of another employee's payroll information without that
18   employee's consent. Human resources requested for plaintiff to schedule a meeting with them
19   immediately. (*Id.*). The letter informed plaintiff that she would be taken off of the work schedule
20   pending her meeting with human resources. (*Id.*).

21         On May 8, 2007, plaintiff responded in writing to human resources' letter. (Doc. # 33-1 at
22   7). Plaintiff requested a more detailed explanation of salary determinations. (*Id.*). Plaintiff did
23   not address human resources' request for her to schedule a meeting, nor did plaintiff respond in
24   any way to human resources' concerns regarding her possession and copying of another
25   employee's confidential information.

26         On May 30, 2007, plaintiff met with human resources. Human resources informed plaintiff
27   that her conduct of opening and copying a co-worker's paystub was a violation of Valley
28

**James C. Mahan**
**U.S. District Judge**

- 2 -

Hospital's confidentiality policies she had previously received and acknowledged that she was familiar with. Valley Hospital terminated plaintiff on May 30, 2007.

Plaintiff filed a charge of discrimination with the Nevada Equal Rights Commission and the Equal Employment Opportunity Commission on April 2, 2008, alleging equal pay, sex, and national origin discrimination, and retaliation for complaining of the alleged discrimination. (Doc. # 33-1 at 21-22). The EEOC issued a right to sue letter to plaintiff on June 15, 2009, for all allegations except equal pay discrimination. (Doc. # 22-7 at 22).

Plaintiff initiated her complaint before this court on November 15, 2013. (Doc. # 1). Plaintiff's complaint alleged three causes of action: (1) sex discrimination under federal anti-discrimination statutes; (2) national origin discrimination under federal anti-discrimination statutes; and (3) retaliation. (Doc. # 1).

On November 18, 2014, the parties stipulated to dismiss plaintiff's second cause of action for national origin discrimination with prejudice. (Docs. ## 18, 19). Defendant filed the instant motion for summary judgment on February 4, 2015, seeking summary judgment as to plaintiff's remaining claims. (Doc. # 22).

On April 29, 2015, the parties stipulated to dismiss plaintiff's first cause of action for sex discrimination with prejudice. (Docs. ## 35, 36). Accordingly, the court now considers defendant's motion for summary judgment with respect to plaintiff's lone remaining claim for retaliation.

## II.     Legal standard

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward

**James C. Mahan**
**U.S. District Judge**

- 3 -

with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is

merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

#### A. *Timeliness of plaintiff's case*

As an initial matter, the court notes that Title VII requires a plaintiff to file suit within ninety days following the plaintiff's receipt of a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1). The ninety-day filing deadline is strictly construed, and an action is therefore barred when a Title VII claimant fails to file on time. *Scholar v. Pac. Bell,* 963 F.2d 264, 267-68 (9th Cir. 1992) (dismissing a Title VII claim filed two days after the ninety-day deadline).

The EEOC processed plaintiff's right to sue letter on June 15, 2009. (Doc. # 22-7 at 22). Plaintiff initiated this suit on November 15, 2013, seemingly well beyond the ninety-day filing period. However, the ninety-day period begins to run upon a claimant's *receipt* of the letter. *See Scholar*, 963 F.2d at 267 n. 2 ("[T]he 90–day period begins to run when claimant receives the right-to-sue letter rather than when the letter is dispatched.").

In this case, neither party presents evidence of when plaintiff actually received the EEOC's right-to-sue letter. The only notation on the right-to-sue letter is that the EEOC director signed it on June 15, 2009. Common sense would instruct that plaintiff received the right-to-sue letter long before filing the instant suit in November 2013. Otherwise plaintiff would have had to receive her right to sue letter more than four years after the EEOC director signed it. However, because the court cannot definitively determine when exactly plaintiff received the right-to-sue letter, thereby starting the ninety-day clock, the court will analyze the merits of defendant's motion for summary judgment with respect to plaintiff's remaining claim for retaliation.

#### B. *Plaintiff's claim for retaliation*

Under Title VII, "it is unlawful to retaliate against an employee because she has taken action to enforce rights protected under Title VII." *Miller v. Fairchild*, 797 F.2d 727, 730 (9th Cir. 1986). To establish a prima facie case for retaliation, a plaintiff must demonstrate: (1) protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d

**James C. Mahan**
**U.S. District Judge**

- 5 -

1018, 1034–35 (9th Cir. 2006).  Section 1981 also applies to retaliation claims based on race. *Manatt v. Bank of Am., N.A.,* 339 F.3d 792, 800–01 (9th Cir.2003).

"Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas Cty.*, 341 F.3d 858, 865 (9th Cir. 2003).  Further, "where . . . the person who exhibited discriminatory animus influenced or participated in the decision-making process, a reasonable factfinder could conclude that the animus affected the employment decision." *Dominguez–Curry v. Nev. Trans. Dep't,* 424 F.3d 1027, 1038–39 (9th Cir.2005).

"Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action." *Miller*, 797 F.2d at 731. "If the employer successfully rebuts the inference of retaliation that arises from establishment of a prima facie case, then the burden shifts once again to the plaintiff to show that the defendant's proffered explanation is merely a pretext for discrimination." *Id.*

The Supreme Court has clarified the standard of proof with respect to causation, holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . .  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

In introducing this heightened causation standard, the Supreme Court recognized that "claims of retaliation are being made with ever-increasing frequency." *Id.* at 2531.  It noted that "lessening the causation standard could also contribute to the filing of frivolous claims, which would siphon resources from efforts by employer, administrative agencies, and courts to combat workplace harassment." *Id.*

Neither party disputes that plaintiff's reporting of an alleged pay disparity qualifies as protected activity nor that plaintiff's termination was an adverse employment action.  At issue is whether plaintiff has established a causal link between her reporting of the alleged pay disparity and her termination.

**James C. Mahan**
**U.S. District Judge**

- 6 -

Plaintiff alleges that her fourteen year employment with Valley Hospital and no prior disciplinary action in her employment history bolster the causal link that Valley Hospital terminated her for complaining about a pay disparity. Defendant responds that Valley Hospital terminated plaintiff for violating employee confidentiality.

Plaintiff offers no evidence to support her position that the note she left for her supervisors requesting clarification as to why Mr. Williams was paid more per hour than her was the but-for causation of her termination. The court refuses to make this conceptual leap. Plaintiff has failed to make a showing sufficient to establish the causal link between her protected activity and termination necessary to meet her burden of proof for her retaliation claim. *See Celotex*, 477 U.S. at 323–24. Summary judgment for defendant is appropriate.

Further, even if the court found that plaintiff had met her initial burden, defendant provides a non-retaliatory reason for plaintiff's termination. Defendant offers evidence to show that Valley Hospital terminated plaintiff because she violated Valley Hospital confidentiality procedures by opening and photocopying another employee's paystub without his permission. Plaintiff received the employee handbook three times during her employment, signed an acknowledgement of the policies in the handbook and that violation of the handbook was cause for termination, and completed a test regarding information management and confidentiality she answered that termination is the result for a breach of confidentiality.

Defendant provides letters between plaintiff and Valley Hospital human resources where human resources indicated the seriousness of the breach plaintiff committed and requested a meeting with her to discuss this breach further. Plaintiff provides nothing to demonstrate that this legitimate non-discriminatory reason for her termination was mere pretext.

. . .
. . .
. . .
. . .
. . .
. . .

**James C. Mahan**
**U.S. District Judge**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Valley Hospital Medical Center, Inc.'s motion for summary judgment (doc. # 22) be, and the same hereby is, GRANTED. The clerk of court shall enter judgment accordingly and close the case.

DATED July 2, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -